IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MEGAN WATSON**                                                                        **PLAINTIFF**

**V.**                          **NO. 3:23-CV-00074-JTK**

**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

## ORDER

### I. Introduction:

Plaintiff, Megan Watson ("Watson"), applied for Title XVI supplemental security income on November 17, 2020, alleging a disability onset date of November 21, 2005.[1] (Tr. at 16). The application was denied initially and upon reconsideration. *Id.* After conducting a hearing, an Administrative Law Judge ("ALJ") denied Watson's application in a written decision dated May 10, 2022. (Tr. at 16-27). The Appeals Council declined to review the ALJ's decision. (Tr. at 1-5). The ALJ's decision now stands as the final decision of the Commissioner, and Watson has requested judicial review.

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

---

[1] Watson subsequently amended her onset date to November 17, 2020. *Id.*

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. **The Commissioner's Decision:**

The ALJ found that Watson had not engaged in substantial gainful activity since the application date of November 17, 2020.[3] *Id*. The ALJ found, at Step Two, that Watson had the following severe impairments: borderline intellectual functioning and anxiety. (Tr. at 18).

After finding that Watson's impairments did not meet or equal a Listing (Tr. at 18-21),[4] the ALJ determined that Watson had the residual functional capacity ("RFC") to perform work at all exertional levels, with additional limitations: (1) she can perform work where the interpersonal contact is incidental to the work performed, and where the complexity of tasks is learned and performed by rote and involves few variables; (2) the supervision required is simple, direct, and concrete; and (3) the work requires only occasional interaction with co-workers, the public, and supervisors. (Tr. at 22).

At Step Four, the ALJ determined that Watson had no past relevant work. (Tr.

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[4] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

at 26-27). Utilizing the testimony of a Vocational Expert ("VE"), the ALJ next determined that, based on Watson's age, education, work experience, and RFC, she was able to perform a number of jobs in the national economy. *Id*. Therefore, the ALJ concluded that Watson was not disabled. *Id*.

### III. <u>Discussion</u>:

    A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

   B. Watson's Arguments on Appeal

Watson contends that the evidence supporting the ALJ's decision is less than substantial. Her only argument is that she met Listing 12.05B (intellectual disorder).

The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*. At Step Three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

Watson contends that her intellectual disability met Listing 12.05B. That section requires the following:

1. Significantly subaverage general intellectual functioning evidenced by A or B:
A. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
B. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

Understand, remember, or apply information (see 12.00E1); or
Interact with others (see 12.00E2); or
Concentrate, persist, or maintain pace (see 12.00E3); or
Adapt or manage oneself (see 12.00E4).

Adult Listing of Impairments, www.ssa.gov/disability/bluebook.

Watson was diagnosed with borderline intellectual functioning and had a special education learning plan in high school, but she achieved a B average and was able to participate in clubs. (Tr.at 354-387). A psychological examiner found that Watson had a full-scale IQ score of 70. (Tr. at 354-359). The examiner also found that Watson was able to take care of personal needs and could perform daily activities. *Id*. In fact, Watson said she could care for her cat, do chores, prepare meals, shop with her parents, watch TV, and play on her Ipad.[5] (Tr. at 24, 224-231).

---

[5] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

She attended church and had a job over Halloween that she said she enjoyed. *Id*. Moreover, Watson improved with mental health therapy. (Tr. at 21). She was helping her father and spending more time outside. *Id*.

The Disability Determination Services psychiatric experts reviewed the record and found that Watson should be limited to unskilled work. (Tr. at 25-26). The ALJ created an RFC along those lines, duly crediting Watson's intellectual difficulties. (Tr. at 22).

When an ALJ evaluates the Listings for mental impairments, he should consider daily activities and general ability to perform tasks that require mental acuity.[6] He should consider consultative examiner reports and medical opinions. He did just that in this case, and he found that Watson did not have significant adaptive functioning limitations, so that portion of Listing 12.05B was not met. (Tr. at 21). Again, every part of a Listing must be met to be found disabled at Step Three. The ALJ did not err in his Step Three finding.

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at Step Three. The finding that Watson was not disabled

---

[6] *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998); *Chunn v. Barnhart*, 397 F.3d 667 (2005); *Miles v. Barnhart*, 374 F.3d 694, 699 (8th Cir. 2004).

within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 11th day of January, 2024.

_____
UNITED STATES MAGISTRATE JUDGE